IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 4, 2023

## IN RE LYRIK L.[1]

**Appeal from the Chancery Court for Putnam County**
**No. 2022-28-A     Ronald Thurman, Chancellor**

_____

### No. M2023-00276-COA-R3-CV

_____

This appeal arises from a pending petition for termination of parental rights and adoption. Two weeks after the maternal grandparents commenced their action to terminate the parental rights of the mother of their grandchild (the father being deceased), the paternal grandparents ("the Intervenors") filed a motion to intervene for the purpose of filing a competing petition for adoption and termination of parental rights; they also sought to set aside an order granting permanent guardianship over the child to the maternal grandparents previously issued by the juvenile court in a separate proceeding. The Intervenors also filed a motion for leave to intervene for the purpose of filing a petition for grandparent visitation. The maternal grandparents opposed all relief sought by the Intervenors. The trial court denied the motion to set aside the juvenile court's order of permanent guardianship for lack of jurisdiction, and it denied the motion to intervene for purposes of adoption on the ground that the Intervenors lacked standing because they did not meet the definition of prospective adoptive parents under Tennessee Code Annotated § 36-1-102(44). However, the court granted their motion to intervene for the purpose of grandparent visitation. The Intervenors appeal the denial of the motion to intervene for purposes of adoption, and the maternal grandparents appeal the order granting the Intervenors leave to intervene for the purpose of grandparent visitation. We have determined that the Intervenors have standing to file a petition for adoption and termination of parental rights; thus, we reverse the trial court's ruling on that issue. We affirm the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part and Affirmed in Part**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KRISTI M. DAVIS, JJ., joined.

---

[1] This court has a policy of protecting the identity of children by initializing the last names of the parents, children, and immediate relatives.

Thomas H. Miller, Franklin, Tennessee, for the appellants, Alisa and Michael S.

Laurie A. Seber, Cookeville, Tennessee, for the appellees, Donna and Bruce S.

## OPINION

### FACTS AND PROCEDURAL HISTORY

On June 11, 2019, Donna and Bruce S., the maternal grandmother and maternal step-grandfather of Lyrik L. ("the Maternal Grandparents"), filed a petition for permanent guardianship of Lyrik in the Putnam County Juvenile Court. Lyrik's father had just died, and her mother consented to the guardianship as a co-petitioner. Days later the juvenile court entered an agreed order for permanent guardianship, which remains in effect. Lyrik has remained in the custody of and lived with the Maternal Grandparents ever since.

This action for termination of parental rights and adoption of Lyrik was commenced by the Maternal Grandparents on April 5, 2022, in the Chancery Court for Putnam County. Two weeks later, on April 19, 2022, the Intervenors, Alisa and Michael S., the child's paternal grandparents, filed a motion to intervene as of right and alternatively by permission to intervene for the purposes of (1) filing an intervening petition for adoption and termination of parental rights[2] and (2) filing a motion to set aside the Maternal Grandparents' order of permanent guardianship and to determine the appropriate custodial arrangement for Lyrik. The Intervenors subsequently filed an amended motion to intervene with an attached intervening petition for adoption of a related child and petition for termination of parental rights.[3]

The motion to intervene was heard on August 12, 2022. Pursuant to an order entered on October 10, 2022, the court denied the Intervenors' motion to set aside the order of permanent guardianship, ruling, "This Court does not have the jurisdiction or power to do such." The court also denied their motion to intervene for purposes of adoption "as [the Intervenors] do not meet the definition of prospective adoptive parents that is required for standing." However, the court granted their motion to intervene for purposes of grandparent visitation. Two weeks later, the Intervenors filed a petition for grandparent visitation pursuant to Tennessee Code Annotated § 36-6-306.

---

[2] The proposed intervening petition for termination of guardianship rights for custody and adoption and/or grandparent visitation was attached.

[3] The Intervenors had also filed a motion seeking visitation; however, their motion for visitation was denied with the court stating, "The Court must follow the orders from the juvenile court as it relates to custody and visitation."

On November 9, 2022, the Intervenors filed a timely motion to alter or amend the ruling on the adoption intervention motion. The motion was denied by order entered on February 14, 2023. This appeal followed.

## ISSUES

The only issue raised by the Intervenors is whether the trial court erred in denying their motion to intervene for purposes of adoption and/or custody. For their part, the Maternal Grandparents contend that the trial court erred in granting the Intervenors' motion to intervene for purposes of grandparent visitation.

## ANALYSIS

### I. INTERVENTION FOR PURPOSES OF ADOPTION AND/OR CUSTODY

The Intervenors contend that the trial court erred in denying their motion to intervene for purposes of adoption and/or custody based on standing. The trial court's order states: "The Court denies the intervening petitioners' motion to intervene for adoption and/or custody, as they do not meet the definition of prospective adoptive parents that is required for standing."

"Standing is a judge-made doctrine by which a court determines whether a party should be permitted to pursue a claim." *Dossett v. City of Kingsport*, 258 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citation omitted). We have stated that the basis for this decision is "whether the plaintiff has alleged a sufficiently personal stake in the outcome of the litigation to warrant a judicial intervention." *Wood v. Metro. Nashville & Davidson Cnty. Gov't,* 196 S.W.3d 152, 157 (Tenn. Ct. App. 2005).

A trial court's determination of whether a party has standing to pursue a cause of action is a conclusion of law. *Cox v. Shell Oil Co.*, 196 S.W.3d 747, 758 (Tenn. Ct. App. 2005). We review a trial court's conclusions of law de novo with no presumption of correctness. *S. Constructors, Inc. v. Loudon Cnty. Bd. of Educ.,* 58 S.W.3d 706, 710 (Tenn. 2001).

The Intervenors filed a motion to intervene in an ongoing petition for termination of parental rights and adoption case. They sought permission to intervene as a matter of right pursuant to Tennessee Rule of Civil Procedure 24.01 and/or permissive intervention pursuant to Tennessee Rule of Civil Procedure 24.02. The trial court denied their motion to intervene based on the finding that the Intervenors lacked standing, thus pretermitting whether they should be granted leave to intervene pursuant to Rule 24.01 and/or 24.02.

The definition of "prospective adoption parents" is found at Tennessee Code Annotated § 36-1-102(44) (2023):[4]

> "Prospective adoption parents" means a nonagency person or persons who are seeking to adopt a child and who have made application with a licensed child-placing agency or licensed clinical social worker or the department for approval, or who have been previously approved, to receive a child for adoption, or who have received or who expect to receive a surrender of a child, or who have filed a petition for termination or for adoption[.]

Edited for clarity, the definition of "prospective adoption parents" as it pertains to the Intervenors reads: "'Prospective adoption parents' means . . . persons who are seeking to adopt a child and . . . who have filed a petition for termination or for adoption[.]" *Id*.

While the court's ruling as set forth in its written order is succinct, as noted above, the court provided additional reasoning when it announced its ruling during the hearing on the motion in open court. In pertinent part, the court reasoned:

> I also — as far as intervening for the purposes of adoption, I don't think this is the appropriate case for it. I think under the factors the Court looks to under the rule under mandatory or permissive intervention, I don't see that this — since [the Maternal Grandparents] had custody this whole time, I just don't see that it's appropriate.

> But having said that, I think since, [counsel for Intervenors], you did file for grandparent visitation rights in juvenile court — and I have questions myself as to whether or not this adoption statute can terminate that — I think you would be entitled to intervene as far as it relates to grandparent visitation rights. I'm not sure those are exhausted and I think you — it would be my impression and it would be my order that [the Intervenors] can intervene as it relates to grandparent visitation rights because I think clearly they have standing to do so, especially in light of the fact they filed that in juvenile court or down below and that was pending at the time.

> So that would be — that would be the Court's impression of your motions here.

The Intervenors contend that the trial court's reasoning was based on a misunderstanding of the statute. Specifically, they rely on the Tennessee Supreme Court case of *In re Sidney J.*, 313 S.W.3d 772 (Tenn. 2010). In that case the maternal grandparents

---

[4] The definition appeared in subsection -102(43) when the case was argued in the trial court, and that is how the parties cite to the definition in their respective briefs.

were awarded temporary custody after the child's father killed the child's mother. Thereafter, the maternal grandparents filed a petition to adopt the child. The paternal grandparents responded by filing an intervening petition for adoption. The trial court granted the intervening adoption petition and awarded visitation to the maternal grandparents. The Court of Appeals reversed, holding that the paternal grandparents did not meet the physical custody requirement. The Supreme Court reversed the Court of Appeals, allowing the intervening petitioners to adopt and affirming visitation to the maternal grandparents. In pertinent part, the *Sidney* Court reasoned:

> Section 36-1-116(f)(1) governs, among other things, a trial court's authority to grant an adoption petition. This section provides, in pertinent part:
>
>> Upon the filing of the petition, the court shall have exclusive jurisdiction of all matters pertaining to the child . . . except for allegations of delinquency, unruliness or truancy of the child pursuant to title 37; provided, that, *unless a party has filed an intervening petition to an existing adoption petition concerning a child who is in the physical custody of the original petitioners,* the court shall have no jurisdiction to issue any orders granting custody or guardianship of the child to the petitioners or to the intervening petitioners or granting an adoption of the child to the petitioners or to the intervening petitioners unless the petition affirmatively states, and the court finds in its order, that the petitioners have physical custody of the child at the time of the filing of the petition, entry of the order of guardianship, or entry of the order of adoption, or unless the petitioners otherwise meet the requirements of § 36-1-111(d)(6) [validly executed surrender].
>
> (Emphasis in original).
>
> **Tennessee Code Annotated section 36-1-116(f)(1) generally prohibits a trial court from granting an adoption "unless the petition affirmatively states . . . that the petitioners have physical custody of the child at the time of the filing of the petition." By its plain language, however, the statute also includes an exception to the physical custody requirement when the petitioners "ha[ve] filed an intervening petition to an existing adoption petition concerning a child who is in the physical custody of the original petitioners**." Tenn. Code Ann. § 36-1-116(f)(1); *See* Dawn Coppock, *Coppock on Tennessee Adoption Law* 80 (2005).
>
> Although the language of section 36-1-116(f)(1) is clear and unambiguous, we are required to construe a statute "so that the component parts are

- 5 -

consistent and reasonable." *Cohen v. Cohen*, 937 S.W.2d 823, 827 (Tenn. 1996). We must therefore address the maternal grandparents' argument that other provisions in the statutory scheme require us to depart from the plain language of section 36-1-116(f)(1).

We first note that the plain language of section 36-1-116(f)(1) is consistent with section 36-1-115(b), which governs standing to file an adoption petition. This section states that "petitioners must have physical custody or must demonstrate to the court that they have the right to receive custody of the child sought to be adopted as provided in [the statute governing a validly executed surrender] at the time the petition is filed, *unless they are filing an intervening petition seeking to adopt the child.*" Tenn. Code Ann. § 36-1-115(b) (2005) (emphasis in original). **Thus, intervening petitioners are not required to have physical custody or the right to receive physical custody of the child sought to be adopted for purposes of filing their petition**.

On the other hand, there are two adoption provisions that do not appear to contemplate an exception to the physical custody requirement. Section 36-1-116(b)(5), which governs the contents of an adoption petition, requires that the petition include a statement "[t]hat the petitioners have physical custody of the child or that they meet the requirements of [a validly executed surrender]." Likewise, section 36-1-120(a)(4), which governs the contents of a final order of adoption, requires that the final order include "[t]he date when the petitioners acquired physical custody of the child and from what person or agency or by which court order." Tenn. Code Ann. § 36-1-120(a)(4) (2005).

**To conclude that these requirements apply to intervening petitioners would, however, render inoperative the exception to the physical custody requirement for those "filing an intervening petition seeking to adopt the child" in section 36-1-115(b).** We have a duty "to construe a statute so that no part will be inoperative." *Tidwell v. Collins*, 522 S.W.2d 674, 676 (Tenn. 1975). We suspect, moreover, that the General Assembly simply did not deem it necessary to reiterate for purposes of these particular subsections that intervening petitioners are exempt from the physical custody requirement. **We therefore conclude that the requirements of sections 36-1-116(b)(5) and -120(a)(4) do not apply when the petition was filed pursuant to the exception to the physical custody requirement for intervening petitioners in section 36-1-115(b).**

For the reasons articulated above, we conclude that the trial court properly granted Sidney's paternal grandparents' adoption petition even though Sidney was in the physical custody of her maternal grandparents, the original

petitioners, at the time the paternal grandparents filed their intervening adoption petition.

*In re Sidney J.*, 313 S.W.3d at 774–76 (emphasis in bold added) (footnote omitted).

As the court noted in *Sidney*, "intervening petitioners are not required to have physical custody or the right to receive physical custody of the child sought to be adopted for purposes of filing their petition." *Id*. at 775. For these reasons, we respectfully disagree with the trial court's legal conclusion that the Intervenors lacked standing to intervene in the Maternal Grandparents' petition for termination of parental rights and adoption of Lyrik.

Although we have determined that the Intervenors have standing, that alone does not necessarily establish whether they are entitled to intervene as a matter of right or based on permissive intervention pursuant to Tennessee Rule of Civil Procedure 24. Because the trial court did not get past the issue of standing in deciding whether the Intervenors are entitled to intervene in the pending action, we remand the intervention issue to the trial court for further consideration and for such other proceedings as the court may deem appropriate.

## II. GRANDPARENT VISITATION

The Maternal Grandparents contend that the trial court erred in granting the Intervenors' motion to intervene for purposes of grandparent visitation.

The standard of review for the granting or denial of permissive intervention is abuse of discretion. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 191 (Tenn. 2000) (citation omitted). The abuse of discretion standard does not permit reviewing courts to substitute their discretion for the trial court. *See Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Nevertheless, the abuse of discretion standard of review does not immunize a trial court's decision from meaningful appellate scrutiny:

Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

*Id.* (citations omitted). Discretionary decisions require "a conscientious judgment, consistent with the facts, that takes into account the applicable law." *White v. Beeks*, 469 S.W.3d 517, 527 (Tenn. 2015) (citing *Lee Med., Inc.*, 312 S.W.3d at 524).

The Maternal Grandparents contend that the trial court did not need to ensure this right was protected when there is specific statutory authority allowing for the Intervenors to pursue grandparent visitation, even if the Maternal Grandparents are successful in the adoption proceeding. In making this argument, they state:

> The relevant statute provides that, "[n]otwithstanding the provisions of T.C.A. § 36-1-121, if a relative or stepparent adopts a child, the provisions of this section apply. (2) if a person other than a relative or a stepparent adopts a child, any visitation rights granted pursuant to this section before the adoption of the child shall automatically end upon such adoption." *Lovelace* [sic] *v. Copley*, 2012 WL 368221, at *9. Based upon this definition, we interpret this prepositional phrase to mean that, in spite of the adoption statute, (i.e., T.C.A. § 36-1-121), if a relative or stepparent adopts the child, then the Grandparent Visitation Statute, as opposed to the adoption statute, is the controlling statute. *Id*. This case was appealed to the Tennessee Supreme Court where they too held that:

>> Applying the foregoing principles, we conclude that the statutes do not conflict. The relevant provision of the Adoption Statute was enacted in 1995. The relevant provision of the Grandparent Visitation Statute was enacted two years later. Not only is the Grandparent Visitation Statute more specific and more recently enacted statutory provision, its statutory text is clearly and unambiguously carves out a narrow, limited exception, in the case of grandparent visitation and stepparent adoption, to the more general rule stated in the Adoption Statute. Mr. Copley was the minor child's stepparent at the time of the adoption. We conclude, therefore that the exception in the Grandparent Visitation Statute, specifically Tennessee Code Annotated section 36-6-306(d)(1), controls. Thus, Mr. Copley's adoption of the minor child did not terminate the visitation rights the Lovelaces [sic] received pursuant to the Agreed Order. The provision of the Final Order of Adoption reserving the Lovelaces' [sic] visitation rights is not void and is consistent with the exception for stepparent adoptions in the Grandparent Visitation Statute. Tenn. Code Ann. § 36-6-306(d)(1).

> *Lovelace* [sic] *v. Copley*, 418 S.W.3d 1, 20–21 (Tenn. 2013).

Relying on the foregoing ruling, the Maternal Grandparents state that the Intervenors' visitation rights are protected by the Grandparent Visitation Statute, which, they contend, has priority over the adoption statute. Thus, they conclude,

> in this particular set of circumstances, there is no justification for the [Intervenors] intervening in the adoption that has now been delayed over one year due to their intervention. Had the Court realized that the adoption did not sever their claim to visitation rights, it is highly doubtful the [Intervenors] would have been allowed to intervene.

In essence, as is noted in the Intervenors' reply brief, the Maternal Grandparents are contending that the intervention for purposes of grandparent visitation was "unnecessary," as opposed to clear error. Nevertheless, as the Intervenors contend, intervention at this stage may be necessary to preserve their rights because the case the Maternal Grandparents rely on pertained to a case in which grandparent visitation had been established by court order **prior to** the adoption. And as the Intervenors correctly note, "It is unclear whether an action to establish grandparent visitation that is initiated <u>after</u> an adoption occurs would be successful."

Significantly, while "[a] final order of adoption of a child cannot require the adoptive parent to permit visitation by any other person," *see* Tenn. Code Ann. § 36-1-121(f), there appear to be two exceptions. One, Tennessee Code Annotated § 36-1-121(f) expressly permits the entry of an order "enforcing or modifying a contract for post-adoption contact pursuant to § 36-1-145." Two, "if a relative or stepparent adopts a child," pursuant to Tennessee Code Annotated § 36-6-306(d)(1), the Grandparent Visitation Statute still applies. More specifically, as held in *Lovlace*, where a stepparent adopted the child, "[t]he provision of the Final Order of Adoption reserving the [grandparents'] visitation rights is not void and is consistent with the exception for stepparent adoptions in the Grandparent Visitation Statute." *Lovlace*, 418 S.W.3d at 21. While Tennessee Code Annotated § 36-1-121(f) seems to contemplate contracts for post-adoption contact, there does not appear to be a case on point to support this conclusion.

For the foregoing reasons, we find no abuse of discretion in the trial court's decision to grant the Intervenors leave to intervene for the purpose of filing a petition for grandparent visitation. Thus, we affirm this decision.

### IN CONCLUSION

The judgment of the trial court is reversed in part and affirmed in part, and this matter is remanded to the trial court for further proceedings consistent with this opinion. Costs of appeal are assessed against the Maternal Grandparents, Donna and Bruce S.

_____
FRANK G. CLEMENT JR., P.J., M.S.